UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE HERGHELIAN,<br><br>  Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,[1] Commissioner of Social Security,<br><br>  Defendant. | Case No.: 1:18-cv-00864-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

## **INTRODUCTION**

Plaintiff Steve Herghelian ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 6, 8.)

1

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based on proper legal standards. Accordingly, the Court will direct that the Commissioner's determination be REVERSED AND REMANDED for further proceedings.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for supplemental security income on July 10, 2014. AR 166-71.[3] Plaintiff alleged that he became disabled on March 14, 2006, due to lower back pain and depression. AR 292. Plaintiff's application was denied initially and on reconsideration. AR 137-41, 147-51. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Daniel Healy held a hearing on December 9, 2016, and issued an order denying benefits on May 31, 2017. AR 13-24, 30-57. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on December 9, 2016, in Stockton, California. Plaintiff appeared with his attorney, Jeffrey R. Duarte. Impartial Vocational Expert ("VE") Linda M. Ferra also appeared. AR 16, 32.

In response to questions from the ALJ, Plaintiff confirmed that he last worked at In Home Supportive Services in 2006. Plaintiff affirmed that he could work full time now if the work would cater to his lower back injury. He had a worker's compensation type injury where he got hurt on the job, he filed a worker's compensation claim for his injury, and he still receives medical care. Although surgery has been recommended, he has refused surgery until his chances to get better improve. AR 34-36. Plaintiff also testified that he had surgery on his right knee in 2004 or 2005, but he still has trouble with the knee. It feels achy in the cold. AR 35-36. Plaintiff did not have any other physical issues. AR 37. Although he smokes, he does not have any breathing problems and he has reduced his smoking to three cigarettes per day. AR 38.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about his mental health issues, Plaintiff testified that he has been diagnosed with depression. He attends counseling, but does not take prescription medication. However, he takes medication for other issues like pain or inflammation. He does not have any side effects from his medications. AR 37-38.

When asked about a normal day, Plaintiff testified that he will do things at home such as microwave things for himself, make his bed and put away light things. His family members do not have to help him do anything at home. He still drives about a total of an hour or two per week to the store and to doctor appointments. He does not have any other regular outside activities. When he is at home, he watches TV for an average of 10 hours each day. He does not have any regular hobbies. AR 39-41.

When asked about his abilities, Plaintiff testified that he can sit about 45 minutes at a time before he needs to stretch, take medication, and massage the area that is hurting. He can stand for an hour without having to sit down. He can walk about 10 minutes before he will need to lie down for about five minutes. AR 43.

In response to questions from his attorney, Plaintiff testified that the problems with his back started as a work injury. He resolved the claim by keeping further medical care. His primary treating physician for the worker's compensation claim is Dr. Robson, who he began seeing in 2014. Plaintiff sees Dr. Robson for his back every month and Dr. Robson has prescribed medications including Naprosyn, Methadone, Cyclobenzaprine, Valexien and one other. AR 44-45.

Plaintiff also had a right to medical care for his stress as part of his worker's compensation claim. He saw a psychologist for two years, but stopped seeing that doctor for personal reasons. He started care with a new doctor two months before the hearing. Plaintiff claimed stress as part of his work injury because he was having bad thoughts, like wanting to hurt himself. He attempted to act on those thoughts about nine months prior to the hearing, putting a gun to his mouth. He is now receiving treatment and went to a clinic when he was having thoughts of hurting himself. Plaintiff described his depression as being constantly sad, angry and thinking about killing himself every day. He was receiving medications to help with these symptoms, but the worker's compensation insurance stopped covering it. AR 45-48. Plaintiff further testified that the problems he is having physically and mentally affect his ability to focus

on day-to-day tasks. They also affect his ability to complete tasks. For example, he will start to clean his room then stop in the middle and forget to finish doing it. AR 48-49.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Linda Ferra. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's same age, educational background and work history. This person could sit for six hours but stand and/or walk less then even two hours each, lift and/or carry less than 20 pounds even occasionally, could never climb, balance, stoop, kneel, crouch or crawl, would not have sufficient concentration ability for even simple routine tasks and would need numerous unscheduled rest breaks causing the employee to be away from the workstation and off task 15 percent of the work day. The VE testified that there were no full-time jobs that could be done. AR 52-53.

For the second hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's same age, education and work history. This person could work at jobs sitting six hours, standing/walking six hours each with normal breaks, lifting/carrying 20 pounds occasionally, 10 pounds frequently, could never climb ramps or stairs, could never work around hazards like moving dangerous machinery or unprotected heights, could not operate motor vehicles and could only work at jobs involving simple routine tasks. The VE testified that this person could perform Plaintiff's past work as a sales attendant. There also would other unskilled jobs in the national economy that he could perform, such as fast food worker (DOT 311.472-010) and housekeeping cleaner (DOT 323.687-014). AR 53-54.

For the third hypothetical, the ALJ asked the VE to assume the same limitations as in hypothetical two, but that the person could have occasional contact with the public, co-workers and supervisors. AR 54. The VE testified that this person could not perform Plaintiff's past work, but there were other unskilled jobs in the national economy that this person could perform, such as housekeeping cleaner and packing line worker (DOT 753.687-038).

**Medical Record**

The relevant medical record will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 16-24. Specifically, the

4

ALJ found that Plaintiff had not engaged in any substantial gainful activity since July 8, 2014. The ALJ identified spinal impairment and depression as severe impairments. AR 18. The ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal any of the listed impairments. AR 18-20. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work except that Plaintiff was limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently, sitting six hours and standing/walking six hours in an eight-hour workday, could not climb ladders, ropes and scaffolds, could not work around hazards (moving dangerous machinery, unprotected heights, operating motor vehicles) and was limited to simple repetitive tasks. AR 20-22. With this RFC, the ALJ found that Plaintiff was capable of performing his past relevant work as sales clerk. Alternatively, the ALJ concluded that there were other jobs in the national economy that Plaintiff could perform, such as cleaner and fast food worker. AR 22-23. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 24.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff alleges that the ALJ erred by (1) failing to make a proper determination regarding Plaintiff's subjective complaints, (2) failing to give deference to the opinion of Plaintiff's treating physician, Dr. Jerome Robson; (3) failing to properly assess Plaintiff's physical RFC; and (4) by failing to properly assess Plaintiff's mental RFC.

**DISCUSSION**[4]

**A.    The ALJ Failed to Properly Evaluate Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ did not offer specific, cogent reasons for rejecting his subjective complaints. (Doc. No. 13 at 7-12.) The Court agrees.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014*); Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

---

[4]    The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 21. In so doing, the ALJ first attempted to discount Plaintiff's subjective complaints of disabling symptoms and limitations based on his daily activities, which were described as ability to "take care of his personal hygiene," "pay bills and handle cash appropriately," "play[] video games" and "use[] a computer." AR 21. Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson*, 359 F.3d at 1196. But here, the daily activities described by the ALJ, which included only the ability to take care of personal hygiene, pay bills and handle cash appropriately, play video games and use a computer, do not contradict Plaintiff's testimony. Daily activities may be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)). Here, there is no indication that the limited activities cited by the ALJ bear a meaningful relationship to the activities of the workplace, are "transferrable" to a work environment or that Plaintiff spent a substantial portion of his day engaged in transferable skills. *Id.*; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996) (recognizing that "many home activities may not be easily transferrable to a work environment"). The Court therefore finds that Plaintiff's daily activities were not a specific, clear and convincing reason for discounting his subjective complaints. *See Orn*, 495 at 639 (finding activities of reading, watching television and coloring in coloring books not sufficient to discount claimant's credibility); *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (finding daily activities not sufficient to discount claimant's subjective testimony where those activities included completing basic chores, sometimes with the help of a friend, and attending occasional social events and there was no indication that these activities comprised a substantial portion of the claimant's day or were transferable to work setting).

The ALJ also attempted to discount Plaintiff's subjective complaints as not entirely consistent with the medical evidence. AR 21. The Court recognizes that lack of medical evidence is a factor that the ALJ can consider in discounting a claimant's subjective complaints. *See Burch v. Barnhart*, 400

7

F.3d 676, 681 (9th Cir. 2005). However, the ALJ failed to provide a detailed summary of the medical records that undermine Plaintiff's complaints. Rather, the ALJ's discussion of the medical evidence regarding Plaintiff's physical condition is limited, confined to the following:

> With regard to the spinal impairment, treatment notes indicated that the claimant has chronic pain in the lumbar spine—consistent with facetal more than discal pain and mechanical pain is more problematic than the radicular feature (Exhibit 2F5). An examination of the spine indicated that his alignment was normal and his range of motion was slightly limited with pain (Exhibit 11F). An MRI lumbar from November 2016 showed multilevel degenerative disc disease of the lumbar spine with mild central spinal canal stenosis at L3-4 and L4-5 (Exhibit 15 F). Based on this information, the claimant is limited to a wide range of light work.

AR 21. This does not appear to be a fair assessment or summary of the medical record, and the ALJ has failed to explain adequately how the objective medical evidence in the record supported his rejection of Plaintiff's symptom testimony. Although the Commissioner attempts to cite additional record evidence, the Court may not "affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 87, 874 (9th Cir. 2003). Moreover, even if there was substantial evidence to support the ALJ's finding that the medical evidence was inconsistent with Plaintiff's complaints, the ALJ could not properly reject Plaintiff's testimony on this reason alone. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.") (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

### B. The ALJ Erred in His Evaluation of the Treating Physician's Opinion

Plaintiff argues that the ALJ erred in his evaluation of the opinion from his treating physician, Dr. Jerome Robson, and the assessment of his physical RFC. (Doc. No. 13 at 12-20).

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion

is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

On April 7, 2015, Dr. Robson completed a Physical Residual Functional Capacity Questionnaire form. Dr. Robson indicated that he had been treating Plaintiff monthly since April 2014 for failed back syndrome and that Plaintiff was permanently disabled. Dr. Robson believed that Plaintiff was capable of low stress jobs, but opined that he only could sit for 15 minutes at one time and stand for 15 minutes at one time. Dr. Robson also opined that Plaintiff could sit less than 2 hours in an 8-hour working day and stand/walk less than 2 hours in an 8-hour working day. Plaintiff also would need to walk every 15 minutes for 5 minutes each time and would need a job that permitted shifting positions at will. Dr. Robson further opined that Plaintiff must use a cane or other assistive device while engaging in occasional standing/walking. He could occasionally lift less than 10 pounds, rarely lift 10 pounds and never lift 20 or 50 pounds. He could frequently look down, turn his head right or left, look up and hold his head in a static position, but he could never twist, stoop, crouch/squat, climb ladders or climb stairs. Dr. Robson indicated that Plaintiff was likely to be absent from work as a result of his impairment or treatment about two days per month. AR 483-86.

Dr. Robson's opinion arguably was contradicted by the state agency physicians, who determined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday, and had no postural, manipulative, visual, communicative or environmental limitations. AR 119-20, 132-33. Thus, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to reject the opinion of Dr. Robson. *Lester*, 81 F.3d at 830.

///

///

9

In evaluating Dr. Bernardo's opinion, the ALJ reasoned as follows:

> Jerome A. Robson, M.D., the claimant's workers compensation doctor, stated that the claimant is totally disabled (Exhibit 4F5, 9, 13, 18, 23; &F16; 17F4 and 9; 18F4 and 15; 19F). However, in another evaluation, the doctor stated that the claimant is capable of low stress jobs. The doctor also noted that the claimant is limited to sitting less than two hours and standing-walking less than two hours in an eight-hour workday. The doctor noted that the claimant needs to shift positions at will and is limited to lifting-carrying less than 10 pounds occasionally and 10 pounds rarely. The claimant can[not] twist, stoop, crouch, and climb. The doctor also stated the claimant would miss about two days per month (Exhibit 8F). In a letter, the doctor stated the claimant has been disabled since April 2014 (Exhibit 9F). A decision by another governmental agency about disability or blindness is based on that agency's rules and is not binding on the Social Security Administration. Additionally, the medical evidence and these statements are not consistent. Thus, little weight is accorded.

AR 22.

As noted above, Plaintiff argues that the ALJ erred in his evaluation of Dr. Robson's opinion. The Court agrees and finds that the ALJ failed to provide specific and legitimate reasons for discounting that opinion.

As one reason, the ALJ attempted to discount Dr. Robson's opinion because he acted as Plaintiff's worker's compensation doctor and his opinion was not binding. AR 22. However, an "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a workers' compensation proceeding, or because it was couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal.2002) (citing *Coria v. Heckler*, 750 F.2d 245, 247–48 (3d Cir.1984)). Further, an ALJ may not reject the report of a treating physician merely because a workers' compensation determination may not be controlling on the ultimate issue of disability. *See Franco v. Colvin*, No. 1:12–CV–01267–SMS, 2014 WL 790912, *18 (E.D. Cal. Feb.26, 2014) (citing *Macri v. Chater*, 93 F.3d 540, 543–44 (9th Cir.1996) ("That workers' compensation determinations are not controlling on the ultimate issue of disability does mean that an ALJ can ignore the report of the physician making the determination.").

As another reason, the ALJ appears to have discounted Dr. Robson's assessment of physical limitations because it was inconsistent with Dr. Robson's statement that Plaintiff was capable of performing low stress jobs. AR 22. Internal inconsistencies in a physician's report provide a basis for excluding that medical opinion. *See Rollins*, 261 F.3d at 856 (ALJ did not err in rejecting various

statements by treating physician because they were internally inconsistent); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602–03 (9th Cir. 1999) (holding that an ALJ may properly reject a treating physician's opinion that is internally inconsistent); *Gabor v. Barnhart*, 221 Fed.App'x 548, 550 (9th Cir. 2007) (finding "internal inconsistencies" in physician's report provided a proper basis to exclude that medical opinion); *see also Melton v. Comm'r of Soc. Sec. Admin.*, 442 Fed.App'x 339, 341 (9th Cir. 2011) (finding internal inconsistency is a specific and legitimate basis for discounting a treating physician's opinion). In this instance, however, there is no apparent inconsistency between the physical limitations ascribed by Dr. Robson and his statement that Plaintiff was capable of low stress jobs. Rather, when asked "To what degree can your patient tolerate work stress?" Dr. Robson stated that Plaintiff was capable of low stress jobs. AR 484. He did not opine that Plaintiff was *physically* capable of performing any job 8-hours a day, 5 days a week, much less a low stress job.

As an additional reason, the ALJ apparently discounted Dr. Robson's opinion regarding Plaintiff's functional limitations as inconsistent with the medical evidence. An ALJ may reject a treating physician's opinion that is inconsistent with the medical record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In this case, as noted above, the ALJ failed to provide a detailed summary of the medical records. "When an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to 'set[ ] out a detailed and thorough summary of the facts *and conflicting clinical evidence*, stating his interpretation thereof, and making findings.'" *Twilley v. Saul*, No. 1:18-CV-0201-JLT, 2019 WL 3760534, at *7 (E.D. Cal. Aug. 9, 2019), citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

The ALJ's reference to the medical record in this case is limited to only three cited records— Exhibits 2F5, 11F and 15F. AR 21. These three records do no support the ALJ's conclusion. The first record, Exhibit 2F5, is a treatment record from July 27, 2013, which affirms that Plaintiff has "[c]hronic pain in the lumbar spine, post sprain, consistent with facetal more than discal pain. Mechanical pain is more problematic than the radicular feature." AR 362. This same record indicates that on examination Plaintiff had greater lumbar pain "arising from sitting, more so than sitting itself, thought that also leaves

and looking fairly stiff. Greater pain on lumbar extension than flexion with palpable tenderness more over the left than right lumbar paraspinals. Slightly kyphotic and antalgic gait on that left side." *Id.* When considering this record as a whole, it does not detract from Dr. Robson's medical opinion regarding Plaintiff's functional limitations, nor does it support the ALJ's finding that Dr. Robson's opinion was inconsistent with the medical record.

The second record, Exhibit 11F, also does not support the ALJ's reasoning for rejecting Dr. Robson's opinion. Exhibit 11F is a record of examination completed in October 12, 2006, which is nearly 10 years before Dr. Robson's opinion. AR 489-90. "The Ninth Circuit has found that medical reports that are most recent are more highly probative than those which were rendered at some earlier time." *Barraza v. Colvin*, No. 2:13-CV-0430 JAM DAD, 2014 WL 651909, at *5 n. 3 (E.D. Cal. Feb. 19, 2014); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.2001) ("A treating physician's most recent medical reports are highly probative."); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986) ("Where a claimant's condition is progressively deteriorating, the most recent medical report is the most probative.").

The third record, Exhibit 15F, also does not provide support for the ALJ's reasoning. Exhibit 15F is an MRI of Plaintiff's lumbar spine dated November 19, 2015, which indicates that Plaintiff has multilevel degenerative disc disease of the lumbar spine with mild central spinal canal stenoses at L3-4 and L4-5. AR 551-52. These MRI findings do not identify any functional limitations that are inconsistent with Dr. Robson's opinion. Further, the MRI appears to suggest a worsening of Plaintiff's condition, noting the MRI "have progressed at L3-4 compared to the prior examination in 2007." AR 552.

The Court therefore finds that the ALJ's attempt to discount Dr. Robson's opinion regarding Plaintiff's functional limitations as inconsistent with the medical evidence is not supported.

As an additional, and as Defendant asserts, it also can be inferred from the record that the ALJ discounted Dr. Robson's opinion in favor of the findings of the state agency physicians, Dr. E. Wong, M.D. and C. Bullard, M.D.

///

///

In evaluating the opinions of the state agency physicians, the ALJ reasoned as follows:

> E. Wong, M.D., and C. Bullard, M.D., State agency medical consultants, reviewed the claimant's medical records and found that the claimant is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. The doctors opined the claimant is limited to standing-walking six hours and sitting for about six hours in an eight-hour workday and has unlimited push-pull capabilities. The doctors also found no postural, manipulative, visual, communicative, and environmental limitations (Exhibits 1A10-11 and 3A9-10). Reduced weight is accorded to the lack of postural and environmental limitations because the medical evidence indicates some limitations in this area. However, the rest of Dr. Wong and Dr. Bullard's opinions are given great weight. The limitations noted by the doctors are well supported with specific references to the medical evidence. The opinions are internally consistent and well as consistent with the evidence as a whole.

AR 22.

The ALJ erred in rejecting Dr. Robson's opinion in favor of state agency physicians' opinions for two reasons. First, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of ... a treating physician." *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)). Second, the ALJ's determination that the state agency physicians' opinions were consistent with the record as whole and supported with specific reference to the record is merely conclusory. The ALJ has provided only a limited summary of the medical evidence, as discussed above, and does not indicate the specific evidence relied upon by the state agency physicians that was not available to Dr. Robson. Further, there is no indication that the state agency physicians had the benefit of more of the longitudinal record than Dr. Robson, who issued his opinion in April 2015. AR 120, 133.

Insofar as Defendant contends that the ALJ properly discounted Dr. Robson's opinion based on Plaintiff's conservative and effective treatment regimen and Plaintiff's admitted daily activities, this contention is not persuasive. There is no indication or inference to be made from the ALJ's decision that he in fact discounted Dr. Robson's opinion for either of these reasons. The Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original) (quoting *Connett*, 340 F.3d at 874). Thus, these additional reasons cannot provide a basis upon which to affirm the ALJ's decision.

///

///

## C. The ALJ Erred in Evaluating Plaintiff's Mental Impairment

Plaintiff alleges that the ALJ erred failing to identify a psychiatric RFC based on the opinion and findings of Plaintiff's consultative evaluator, Dr. Robert Schneider. (Doc. No. 13 at 22.)

On November 16, 2016, Dr. Schneider evaluated Plaintiff at the request of his attorney relative to his social security income application. Dr. Schneider interviewed Plaintiff, reviewed records, and conducted a mental status evaluation. On mental status, Dr. Schneider indicated that Plaintiff appeared depressed with a flat and depressive affect. His speech was normal and he understood questions and was able to respond in a clear and coherent manner. On psychological testing, Plaintiff scored in the range of severe depression on the Beck Depression Inventory-II, with no evidence of exaggeration. Dr. Schneider diagnosed Plaintiff with major depressive disorder, somatic symptom disorder and chronic pain disorder, secondary to physical injury. Dr. Schneider opined that Plaintiff had mild impairment in the ability to follow detailed and complex instructions, had moderate to marked impairment in the ability to relate and interact with coworkers and the public, moderate impairment in the ability to maintain concentration and attention, persistence and pace, moderate to marked impairment in the ability to associate with day-to-day work activities, including attendance and safety, mild impairment in the ability to accept instructions from supervisors, and moderate to marked impairment in the ability to maintain regular attendance in the workplace and perform work activities on a constant basis. AR 595-611.

Dr. Schneider also completed a Mental Residual Functional Capacity Statement. Dr. Schneider opined that Plaintiff would be unable to perform activities within a schedule, maintain regular attendance and be punctual and within customary tolerances for 15% or more of an 8-hour workday, would be "off task" for 20% of an 8-hour workday, would likely be absent from work 5 days or more per month and would likely be unable to complete an 8-hour work day 5 days or more per month. AR 588-91. Additionally, Dr. Schneider completed a Mental Residual Functional Capacity Form and a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) form. Dr. Schneider reported that Plaintiff would be unable to perform activities within a schedule, maintain regular attendance, complete a normal workday, or interact appropriately with the general public for 15% or more of an 8-hour work day. AR 592-94.

///

In evaluating Dr. Schneider's opinion, the ALJ reasoned as follows:

> Robert Schneider, Ph.D., the claimant's treating doctor, stated that the claimant would be off task 15 percent or more in performing activities within a schedule, in completing a normal workday or work week, and in interacting with the general public. The doctor also pointed out that the claimant will be "off task" about 20 percent of the workday and miss more than five days of work per month. The doctor stated that the claimant has been disabled since 2009 (Exhibits 20F and 21F). A decision by another governmental agency about disability or blindness is based on the agency's rules and is not binding on the Social Security Administration. Additionally, it is not consistent with the medical evidence and is therefore accorded little weight.

AR 19.

Because Dr. Schneider's opinion was contradicted by the State agency consultative examiner and the State agency physicians, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence in the record to reject it. *Lester*, 81 F.3d at 830-31. As the first reason, the ALJ apparently rejected Dr. Schneider's opinion because it was a "decision by another governmental agency about disability" and "not binding on the Social Security Administration." AR 19. This reason is not legitimate and is not supported by the record. As noted above, Dr. Schneider, a clinical psychologist, was requested by Plaintiff's counsel to conduct an evaluation of Plaintiff "relative to his SSI application." AR 595. There is no evidence in the record that Dr. Schneider issued a decision on behalf of another governmental agency.

As the second apparent reason to discount Dr. Schneider's opinion, the ALJ asserted that it was not consistent with the medical evidence. AR 19. An ALJ may discount an examining doctor's opinion when it is inconsistent with or unsupported by the medical evidence. *See Batson*, 359 F.3d at 1195; *see also Tommasetti*, 533 F.3d at 1041. Here, the Court cannot ascertain the medical evidence relied on by the ALJ to discount Dr. Schneider's opinion. The ALJ did not offer a detailed summary of Plaintiff's medical records relative to his mental impairment nor did he explain how that medical evidence conflicted with Dr. Schneider's opinion. To properly offer a specific and legitimate reason for rejecting examining physician testimony, the ALJ must provide "a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir.1989).

Here, the ALJ cited only the following medical evidence:

> The claimant was diagnosed with major depressive disorder (Exhibit 14F6). He was prescribed Paxil, an antidepressant medication (Exhibit 13F). In November 2016, the claimant's depression was noted to be improving (Exhibit 21F2). At this time, the claimant's depression was noted to be mild (Exhibit 21F7).

AR 19. The ALJ's reference to medical records noting improvement and mild depression are both taken from Dr. Schneider's own report and are not accurate. According to Dr. Schneider's report, Plaintiff reported that his depression was improving "when he was seeing Dr. Hobby" from 2009 to 2014, not that his depression was improving in November 2016. AR 596 (Exhibit 21F2). Further, the reference to "mild" depression in Dr. Schneider's report is from an evaluation by Dr. Hobby, which again did not occur in 2016. AR 601 (Exhibit 21F7).

For these reasons, the Court concludes that the ALJ failed to provide specific and legitimate reasons to reject Dr. Schneider's opinion.

### D. Remand is Warranted

After having found error, " '[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the Court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the Court cannot conclude that there are no outstanding issues left to be resolved in this case or that the record does not raise any serious doubts that Plaintiff was disabled during the relevant period. Questions as to the extent of Plaintiff's impairments remain unresolved, given the ALJ's insufficient explanation of various physician opinions. Further proceedings would be useful to allow the ALJ to resolve conflicts in the medical evidence, clarify his assessment of the physicians' opinions, and reevaluate Plaintiff's RFC in light of the medical evidence. This matter will, therefore, be remanded for further proceedings consistent with this order.

Additionally, because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of Plaintiff's remaining arguments. *See Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is REVERSED, and the case REMANDED to the ALJ for further proceedings. On remand, the ALJ will reweigh the medical evidence and address the deficiencies identified by the Court. If necessary, the Commissioner may hold further hearings and receive additional evidence. Accordingly, the Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Steve Herghelian and against Defendant Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 23, 2019**   /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE